# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CHRYSTAL GLEISNER, ET AL. | § | |
| | § | |
| V. | § | CASE NO. 4:05CV388 |
| | § | (Judge Schneider/Judge Bush) |
| PRESBYTERIAN HOSPITAL OF | § | |
| PLANO, INC., ET AL. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Rupinder S. Bhatia, M.D.'s Motion to Dismiss Plaintiffs' First Amended Original Complaint (Docket #31), Defendants Columbia North Texas Subsidiary GP, LLC, Columbia Medical Center of McKinney Subsidiary, LP, and HCA/Green Oaks Behavioral Healthcare Services Affiliates, Inc.'s ("Columbia Defendants") Motion to Dismiss Plaintiffs' First Amended Original Complaint (Docket #34), and Defendant Presbyterian Hospital of Plano's ("Presbyterian") Motion to Dismiss Plaintiffs' First Amended Original Complaint (Docket #37). Having considered the motions and Plaintiffs' responses, the Court finds as follows.

On August 14, 2003, Michael Scarcella went to the Presbyterian Emergency Department with a fractured jaw and symptoms of drug withdrawal. Scarcella was a body builder of some renown and was evidently addicted to Gamma Hydroxybutyric Acid ("GHB"). He sustained his fractured jaw in a barroom brawl. A psychiatric consultation was conducted on Mr. Scarcella. Scarcella was found to be suffering from numerous symptoms of GHB withdrawal, including hallucinations, and was admitted to the intensive care unit. The hospital determined that Mr. Scarcella was medically unstable and he was found to be a serious risk of harm to himself and others

around him.

Scarcella remained at Presbyterian until August 25, 2003. His broken jaw was wired shut, but his other health problems persisted. On August 25, 2003, Scarcella was suffering from staph sepsis, staph bacteremia, pneumonia, GHB withdrawal, psychiatric disturbance, anxiety, hallucinations, tremors, confusion, increased restlessness, and paranoid delusions. Records indicate that he was unable to understand anything and complained of people and bugs in the room.

Scarcella was taken from the Intensive Care Unit and transferred on August 25, 2003 to North Central Medical Center ("NCMC"), which is operated by the Columbia Defendants. Plaintiffs contend that, at the time of transfer, none of Mr. Scarcella's symptoms had subsided. Mr. Scarcella was transferred in the back of a police car with handcuffs on. Although a pair of wire cutters had been assigned to Mr. Scarcella at Presbyterian, the wire cutters were not sent with him to NCMC.

Plaintiffs allege that Presbyterian elected to transfer Mr. Scarcella because he had no insurance and was otherwise unable to pay for treatment. Furthermore, Plaintiffs allege that, prior to transfer, Presbyterian failed to stabilize Scarcella's substance abuse, psychiatric disturbance, and pneumonia. Plaintiffs further contend that Presbyterian staff failed to inform NCMC staff of Mr. Scarcella's true condition and failed to ensure that NCMC staff were properly trained.

Upon his arrival at NCMC, Plaintiffs contend that Scarcella was grasping for air, confused, psychotic with substance abuse, distressed, turning purple, hyperventilating, and pacing the floor. According to Plaintiffs, NCMC failed to conduct an emergency medical screening examination on Mr. Scarcella. After Mr. Scarcella's conditions persisted for five hours, he collapsed and died. Mr. Scarcella's airway could not be accessed for resuscitation because his jaw was wired shut and no wire cutters were present.

Plaintiffs filed their Original Complaint in the Marshall Division of the Eastern District of Texas on August 12, 2005, alleging claims for negligence and for Defendants' violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. On November 1, 2005, the Court granted Plaintiffs leave to amend their Original Complaint. Plaintiffs' First Amended Original Complaint expands upon the statement of facts, clarifies that no claim is being brought against Defendant Rupinder S. Bhatia, M.D. under EMTALA, and adds claims under the Texas Health and Safety Code, the Texas Anti-Dumping Statute, and the Texas Patient's Bill of Rights. On October 5, 2005, the case was transferred to this Court. All Defendants have moved to dismiss Plaintiffs' First Amended Original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Although Plaintiffs have filed a Third Amended Complaint, nothing substantive has been added and the court will treat Defendants' Motions as though directed to the latest filed Complaint.

**Standard**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a district court's subject matter jurisdiction. The Court properly grants a motion to dismiss for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)( quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). A district court may dismiss an action for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *See Williamson v.*

*Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *see also Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)(citations omitted).

Generally, when a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, a Court should consider the jurisdictional attack before deciding whether the Plaintiffs have failed to state a claim. *Tayler v. Dam*, 244 F. Supp. 2d 747, 755 (S.D. Tex. 2003). However, in this instance, the Court finds that Defendants claims of lack of subject matter jurisdiction are contingent upon whether Plaintiffs have stated a claim under the EMTALA. Therefore, the Court will address the Defendants' Rule 12(b)(6) motions first.

Prior decisions of both the United States Supreme Court and the Fifth Circuit Court of Appeals have made it clear that motions to dismiss for failure to state a claim upon which relief can be granted should not be granted lightly. For a complaint to be dismissed for failure to state a claim, it must appear "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [the]m to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Reeves v. City of Jackson, Mississippi*, 532 F.2d 491 (5th Cir. 1976).

Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying the plaintiffs an opportunity to develop facts to support their complaint. Moreover, sufficient procedures are available to defendants to seek summary disposition of a lawsuit after plaintiffs have been afforded some opportunity to develop facts to support their complaint. *Reeves*, 532 F.2d at 494.

## **Analysis**

Dr. Bhatia argues that Plaintiffs cannot state a claim against him under EMTALA. Plaintiffs have now conceded as much, and the Court agrees. Although the Fifth Circuit has not explicitly

4

resolved the issue of whether EMTALA provides a private cause of action against physicians, all of the other courts that have done so have held that it does not. *Acosta v. Bleich,* 2004 WL 1057570, at *2 (citing *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256 (9th Cir. 1995); *Delaney v. Cade*, 986 F.2d 387, 393-94 (10th Cir. 1993); *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 876-77(4th Cir. 1992); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1040 n.1 (D.C. Cir. 1991); *Alvarez Torres v. Hosp. Ryder Mem'l, Inc.*, 308 F. Supp. 2d 38, 40 (D. Puerto Rico 2004); *Lebron v. Ashford Presbyterian Cmty. Hosp.*, 995 F. Supp. 241, 243-44 (D. Puetro Rico 1998)). Nor does EMTALA provide a federal medical malpractice cause of action. *See Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994); *Gatewood*, 933 F.2d at 1041; *Acosta*, 2004 WL at *2. Recent amendments to EMTALA also indicate that Congress had no intention to expand coverage of the Act to individual doctors. *See* 42 U.S.C. § 1395dd(d)(2))(A) (granting a private right of action to a person who suffers personal harm against a hospital). Since Plaintiffs admit that EMTALA does not apply to Bhatia, the Court declines to exercise supplemental jurisdiction as to Bhatia and finds that all claims against Defendant Bhatia should be dismissed. *See* 28 U.S.C. § 1367(c)

The Columbia Defendants also seek dismissal. Simply put, the Columbia Defendants argue that there can be no EMTALA clam against a hospital for failing to screen or stabilize a patient who has never been discharged or transferred. Under EMTALA, hospitals have two principal obligations: (1) to provide appropriate medical screening to any individual seeking treatment to determine whether the individual has an emergency medical condition; and (2) if an emergency medical condition exists, to provide stabilization treatment before transferring the individual. 42 U.S.C. § 1395dd(a),(b); *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002). The basic premise underlying the statute is to prevent dumping of patients in need of emergent care, not to create a federal

malpractice statute. *See generally*, *Bryan v. Rectors & Visitors of Univ. of Virginia*, 95 F.3d 349 (4th Cir. 1996).

Since the Columbia Defendants did not discharge or transfer Scarcella, there can be no violation. Failure to adequately screen, assess or treat a patient is nothing more than a malpractice claim outside federal regulation where there has been no discharge or transfer. There is no Congressional intent to preempt state law with EMTALA. *Mazurkiewicz v. Doylestown Hosp.*, 305 F. Supp. 2d 437 (E.D. Pa. 2004). And the obligations of EMTALA only apply to transferring hospitals, not transferee hospitals. *Alsay v. East Jefferson Gen. Hosp.*, 1998 WL 661479, at *5 (E.D. La. Sept. 21, 1998). Furthermore, if a hospital does not transfer a patient, there is no liability for failing to stabilize under EMTALA. *See Harry v. Marchant*, 291 F.3d 767 (11th Cir. 2002). There is likewise no liability under EMTALA if the patient is not admitted through the emergency room. *Dollard v. Allen*, 260 F. Supp. 2d 1127 (D.Wyo. 2003); *Sanchez Rivera v. Doctors Ctr. Hosp., Inc*. 247 F. Supp. 2d 90 (D. Puerto Rico 2003). The Columbia Defendants' motions are granted and they are dismissed for lack of jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against the Columbia Defendants. *See* 28 U.S.C. § 1367(c).

As to Presbyterian, the only question is whether the admission of Scarella to the hospital vitiates Plaintiffs' EMTALA claim. There is no dispute that Scarella came to the emergency room and was assessed. Likewise, there is no dispute that he was subsequently transferred to another hospital for psychiatric evaluation. Does his eleven day stay at Presbyterian deprive this Court of jurisdiction? Put another way, does the eleven day hospital stay take this case out of the EMTALA umbrella, even if the patient is not stabilized? As one Court has stated, the Act was designed to prevent hospitals from either turning down or "dumping" indigent patients. It was not a measure to

6

force hospitals to provide long term care for uninsured patients. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131 (6th Cir. 1990) (Jones, J, concurring).

Some cases hold that once a patient has been screened properly in the emergency room and has been admitted to the hospital for treatment, and is receiving treatment, the transfer provisions of EMTALA no longer apply. *Scott v. Hutchinson Hosp.*, 959 F. Supp. 1351 (D. Kan. 1997). *Hussain v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 914 F. Supp. 1331 (E.D. Va. 1996). Other cases underscore the emergent nature of situation in determining whether provisions of the statute apply. The Fourth Circuit has reached a conclusion that to stabilize for purposes of transfer is a relative concept that depends on the situation. The stabilization requirement is thus defined entirely in connection with a possible transfer and without any reference to the patient's long-term care within the system. In *Bryan*, the Court held that the stabilization requirement was intended to regulate the hospital's care of the patient only in the immediate aftermath of the act of admitting her for emergency treatment and while it considered whether it would undertake longer-term full treatment or instead transfer the patient to a hospital that could and would undertake that treatment. *Bryan*, 95 F.3d 349, 352 (4th Cir. 1996). EMTALA was enacted to fill a lacuna in traditional state tort law by imposing on hospitals a legal duty that the common law did not recognize, the provision of emergency care for all. *Hardy v. New York City Health and Hosp. Corp.*, 164 F.3d 789 (2nd cir. 1999). Although the statute does not apply a litmus test to determine when its objectives have been met, admission for treatment and observation for an extended period of time would appear to have filled the gap noted in *Hardy*.

Logically, once a patient is admitted for treatment, observation or monitoring, state law tort claims govern his care and therefore, the Congressional intent on equal emergent care for all

purposes has been satisfied. At this point in time, a patient has the full panoply of rights accorded by state law, and EMTALA adds nothing in the way of added protection. If the patient is thereafter transferred when not "stabilized," the hospital does so at its own peril under that state's malpractice or tort laws. By admitting a patient to the hospital, the hospital has undertaken responsibility for the patient's ultimate care and treatment under acceptable medical practices. This analysis is in accord and consistent with the regulations now in place, but not codified at the time of Scarella's admission. *See generally*, 42 C.F.R. 489.24(d)(2)(I) ("If a hospital has screened an individual under paragraph (a) of this section and found the individual to have an emergency condition, and admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under (the stabilization requirement) with respect to that individual").

In *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162 (9th Cir. 2002), the Court chose a middle ground analysis from that in *Thornton* or *Bryan*. The Court held that EMTALA was satisfied once a patient was admitted to the hospital as long as such admission was not a ruse to avoid EMTALA's requirements. In *Morgan v. N. Miss. Med. Ctr.*, 2005 WL 3275793 (S.D. Ala. Dec. 2, 2005), the Court adopted the Ninth Circuit reasoning holding that admission to the hospital did not foreclose liability if the hospital failed to admit the patient in good faith or did so as a subterfuge to avert EMTALA liability. Plaintiffs' pleading only alleges that Scarella was transferred because of his inability to pay for insurance and that there was a fraudulent certification for transfer.

The Court finds that EMTALA's patient stabilization requirement ends when an emergency room patient is admitted for inpatient care, absent evidence that inpatient admission was done to avoid EMTALA's requirements; after a patient is admitted for inpatient care, state tort law provides

a remedy for negligent care. 42 U.S.C. § 1395dd(b)(1), (e)(1)(A). A hospital cannot escape liability under EMTALA by ostensibly "admitting" a patient, with no intention of treating the patient, and then discharging or transferring the patient without having met the stabilization requirement. In general, however, a hospital admits a patient to provide inpatient care. It would appear that admission satisfies the Congressional concern. If admission and good faith treatment are not enough, then Congress has indeed engrafted a federal malpractice statute with unlimited liability.

Some cases are fairly straightforward as to whether EMTALA applies. The issue before the Court is whether Plaintiffs have sufficiently stated a claim to avoid dismissal. The Court finds that in the most liberal reading of the Complaint, in lieu of the guidance from this circuit as well as the Supreme Court of the United States, Plaintiffs narrowly survive Presbyterian's Motion to Dismiss. Plaintiffs' complaint states that Scarcella was transferred without the medical equipment (wire cutters); to a facility not adequately equipped to care for Scarella, who had pneumonia as well as mental problems; and that he was transferred in a police car and not an ambulance. It may well be that when faced with a motion for summary judgment, Plaintiffs will not be able to maintain the EMTALA action. The Court finds that the majority of Plaintiffs' complaints with Presbyterian involve matters of state law. The Court declines to exercise its supplemental jurisdiction and dismisses all claims against all defendants except as to Plaintiffs' claim against Presbyterian under EMTALA. The Court finds that Plaintiffs' malpractice claims predominate over their EMTALA claim and should be dismissed. *See* 28 U.S.C. 1367(c)(2). Furthermore, state courts are better suited to determine matters of state law in medical malpractice actions.

## **RECOMMENDATION**

Based upon the foregoing, the Court recommends that Defendant Rupinder S. Bhatia, M.D.'s Motion to Dismiss Plaintiffs' First Amended Original Complaint and the Columbia Defendants Motion to Dismiss Plaintiffs' First Amended Original Complaint should be GRANTED, and all claims against said Defendants should be DISMISSED. The Court further recommends that Plaintiffs' EMTALA claims against Defendant Rupinder S. Bhatia, M.D. and the Columbia Defendants should be DISMISSED WITH PREJUDICE. The Court finally recommends that Defendant Presbyterian's Motion to Dismiss be GRANTED, in part, and that all claims against Presbyterian, with the exception of Plaintiff's EMTALA claim, be DISMISSED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 25th day of January, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

10